UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**TIMOTHY J. O'BRIEN,**

                           **Petitioner,**

                -v-                                    **7:12-CV-1600 (NAM/TWD)**

**STEVEN YUGARTIS, as Mayor of the Village of Potsdam,
New York, STEVEN WARR, ELEANOR HOPKE and
RONALD TISCHLER, as Trustees of the Village of Potsdam,
THE VILLAGE OF POTSDAM NEW YORK and THE
VILLAGE BOARD OF THE VILLAGE OF POTSDAM,
NEW YORK,**

                           **Respondents.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Office of David M. Lenney
David M. Lenney, Esq., of counsel
514 Vischer Ferry Road
Clifton Park, New York 12065
Attorney for Petitioner

Lemire, Johnson & Higgins, LLC
April J. Laws, Esq., of counsel
Gregg T. Johnson, Esq., of counsel
Timothy J. Higgins, Esq., of counsel
P.O. Box 2485
2534 Route 9
Malta, New York 12020

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

    In this action under 42 U.S.C. § 1983 and New York State law, plaintiff claims he was

wrongfully discharged from his employment as Code Enforcement Officer of the Village of

Potsdam, New York ("Village").[1]  After plaintiff commenced the action in New York State Supreme Court, St. Lawrence County, defendants removed it to this Court on the ground of federal question jurisdiction.  *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]").  Presently before the Court are defendants' motion (Dkt. No. 31) for summary judgment and plaintiff's cross motion (Dkt. No. 37) for partial summary judgment awarding him reinstatement, back pay, and benefits.  The Court grants defendants' motion insofar as it seeks summary judgment on the federal claims, denies plaintiff's cross motion, and remands the remaining claims to state court.

## BACKGROUND

The "Amended Petition and Complaint" (Dkt. No. 12) alleges:

> 5. On May 20, 2011, the Village of Potsdam Board of Trustees resolved to engage and appoint Petitioner as the Village of Potsdam's Code Enforcement Officer "effective May 30, 2011 at a salary of $44,904, to increase to $45,904 upon the successful completion of his probationary period."
> 6. On May 30, 2011, Petitioner commenced employment as the probationary Village of Potsdam Code Enforcement Officer.
> 7. At the latest, on May 29, 2012, Petitioner completed his probationary period.
> 8. On May 30, 2012, Petitioner appeared for work and did commence perform[ing] his duties and was paid to perform his duties as the non-probationary full time Village of Potsdam Code Enforcement Officer.
> 9. Upon information and belief, as of May 30, 2012, Petitioner held a position by permanent appointment in the competitive class of the classified civil services.
> 10. On May 30, 2012, the Village of Potsdam Administrator advised Petitioner that Respondents had purported to terminate Petitioner as the Village of Potsdam Code Enforcement Officer.

---

[1] Because the pleading removed to this Court was a combined N.Y.C.P.L.R. Article 78 petition and action at law, it refers to O'Brien as "petitioner" and defendants/respondents as "respondents." Throughout the papers before the Court, "petitioner" and "plaintiff" are used interchangeably, as are "respondents" and "defendants."

11. Upon information and belief, Petitioner was and remains entitled to all of the protections afforded full time Village employees under and pursuant to New York Civil Service Law Section 75, the Village of Potsdam Employee Handbook and the Saint Lawrence County Civil Service Manual.

12. Upon information and belief, Petitioner was a public employee as of May 30, 2012.

13. Upon information and belief, Respondent was and remains a public employer.

14. Upon information and belief, Petitioner was and remains entitled to all of the protections afforded full time Village employees under and pursuant to New York Civil Service Law Section 75-B.

\*\*\*

19. In connection with the performance of his duties, Petitioner did inspect, report and record the required information, and required those engaged in the use, construction, alteration and repair of buildings to comply with the Laws, Rules and Regulations of the State of New York prior to issuing building permits, certificates of occupancy and other official forms and permits.

20. Prior to his appointment as a full time Code Enforcement Officer for the Village, and for a period of approximately eighteen months, Petitioner concurrently held two part time Code Enforcement Officer jobs for the Village.

21. Upon information and belief, Respondents never received or acted upon any formal written or other complaint about Petitioner's job performance during his entire tenure with the Village.

22. Respondents Yugartis and Warr complained to Petitioner, and, upon information and belief, complained to others, that Petitioner's enforcement of the Laws, Rules and Regulations of the State of New York were injuring or could injure said Respondents' personal and pecuniary interests.

23. Respondent Yugartis' personal and pecuniary interests included his standing as a professor at Clarkson University, which was an institution that used, constructed, maintained and repaired structures that were required to be in conformance with the Laws, Rules and Regulations of the State of New York.

24. When Petitioner took proper and legal and required steps to compel Clarkson University to abide by the Laws, Rules and Regulations of the State of New York, Respondent Yugartis scolded, cajoled and threatened Petitioner about his job performance, implying that certain projects should not be "slowed down" as a result of Petitioner's performance of his statutorily mandated duties.

25. Respondent Warr's personal and pecuniary interests included his role as property manager of rental housing in the Village for a family trust.

26. When Petitioner took proper and legal and required steps to withhold permission for the use of a structure or a portion thereof for an illegal purpose, Respondent Warr scolded, cajoled and threatened Petitioner about his job

-3-

> performance.
> 27. Trustee Hopke is an employee of Clarkson University.
> 28. Trustee Tischler is an employee of a vendor to Clarkson University.
> 29. Upon information and belief, Petitioner's performance of his duties included disclosures to the Village of Potsdam that its practice of discouraging the Code Enforcement Officer from recording violations of the Laws, Rules and Regulations of the State of New York, presented a substantial and specific danger to the public health and safety.
> 30. Upon information and belief, Respondents retaliated against Petitioner for his disclosures and/or threatened disclosures in violation of the New York State Civil Service Law and in violation of an implied condition of employment.
> 31. Respondent's conduct was in violation of Petitioner's rights under and pursuant to the Constitutions of the State of New York and the United States of America, including the First, Fourth and Fourteenth Amendments thereof affording Petitioner to right to freedom of expression, procedural and substantive due process and the equal protections of the law.

(Citation to record omitted.)

Claim One seeks annulment pursuant to New York Civil Practice Law and Rules, Article 78 ("Article 78") of the Village's termination of plaintiff's employment. Plaintiff contends that his probationary employment had ripened into a permanent one, and that therefore his termination without the legal protections to which permanent employees are entitled under section 75 of the New York Civil Service Law ("CSL") constituted an error of law and was arbitrary, capricious, and an abuse of discretion.

Claim Two asserts that plaintiff's termination violated the "whistle-blower" protection of CSL § 75-b. Plaintiff states that respondents are public employers and a governmental body; that he is a public employee covered by section 75-b; that his "lawful performance of his job as Code Enforcement Officer included disclosing information to the Respondents that involved imminent and serious dangers to the public health and safety"; and that he was terminated because he disclosed to defendants "information regarding violations of laws, rules and regulations which

-4-

violations created and presented a substantial and specific danger to the public health and safety, including safety and code violations at Clarkson University and property that Trustee Warr managed for his family."

Claim Three alleges wrongful termination in violation of an implied condition of the employer-employee relationship. Plaintiff bases this cause of action on the theory that "[t]here exists an implied condition of the employment contract between the Respondents and Petitioner to the effect that Petitioner cannot lawfully be discharged from his employment for performing his legally imposed duties, including the enforcement of the Laws, Rules and Regulations of the State of New York." According to plaintiff, defendants violated the aforesaid implied condition by terminating him for enforcing these laws, rules, and regulations.

Claim Four asserts claims under 42 U.S.C. § 1983 for violation of plaintiff's right to free speech under the First Amendment and right to due process under the Fourteenth Amendment of the Federal Constitution.[2] Plaintiff alleges:

> 59. At the time Petitioner reported his findings about the conditions at various properties within the Village, Petitioner had the right to and did engage in lawful freedom of expression under and pursuant to the First Amendment to the Constitution.
> 60. At the time the Respondent decided to terminate Petitioner, he was entitled to substantive and procedural due process and to the equal protection of the laws under and pursuant to the Fourth and Fourteenth Amendments to the Constitution.
> 61. Respondents violated Petitioner's constitutional rights and privileges by terminating Petitioner for expressing himself.
> 62. Respondents violated Petitioner's constitutional rights and privileges by

---

[2] Although in paragraph 60 plaintiff mentions substantive due process, equal protection and the Fourth Amendment, nowhere in his papers on this motion does he articulate a substantive due process claim or claims under the Equal Protection Clause or the Fourth Amendment. To the extent that plaintiff may have asserted such claims in his amended pleading, he is deemed to have abandoned them on this motion. Thus, plaintiff's sole federal constitutional claims are the First Amendment and procedural due process claims.

-5-

> failing to afford Petitioner notice, the opportunity to answer the charges, to obtain representation and to a formal hearing.
> 63. Respondents' conduct was under the color of law and said conduct subjected Petitioner to the deprivation of the rights and privileges secured by the Constitution and the laws.

Claim Five seeks reinstatement on the following theories:

> 66. Prior to his appointment to the position of Chief Code Enforcement Officer, Petitioner held the position of permanent part time (or alternatively full time) assistant Code Enforcement Officer and/or technician.
> 67. Petitioner's appointment as Chief Code Enforcement Officer was a promotion or a transfer within the same civil service division.
> 68. Alternatively, upon information and belief, Respondents found that Petitioner's conduct and/or performance was not satisfactory during the probationary term.
> 69. Pursuant to the Rules of the Classified Civil Service of Saint Lawrence County approved by the New York State Civil Service Commission (Revised March 23, 2011), upon the determination that Petitioner's conduct and/or performance was not satisfactory during the probationary term, Respondents were required to restore Petitioner to the part time position(s) he previously held at the Village of Potsdam.

## DISCUSSION

**Standard on Summary Judgment**

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). When deciding a summary judgment motion, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

**Claim Four - Federal Constitutional Claim - First Amendment**

-6-

Plaintiff claims he was wrongfully terminated in retaliation for engaging in speech protected by the First Amendment. The specific allegations of protected speech set forth in the amended petition are that "Petitioner's performance of his duties included disclosures to the Village of Potsdam that its practice of discouraging the Code Enforcement Officer from recording violations of the Laws, Rules and Regulations of the State of New York, presented a substantial and specific danger to the public health and safety"; that "Respondents retaliated against Petitioner for his disclosures and/or threatened disclosures"; that "[a]t the time Petitioner reported his findings about the conditions at various properties within the Village, Petitioner had the right to and did engage in lawful freedom of expression under and pursuant to the First Amendments to the Constitutions"; and that "Respondents violated Petitioner's constitutional rights and privileges by terminating Petitioner for expressing himself."

In his deposition, when asked what facts supported his belief that his freedom of speech was infringed, plaintiff stated: "The concerns that my code opinions expressed to Clarkson and other contractors who I felt were not following the code were suggested to be suppressed by the Village."

Plaintiff's Statement of Material Facts includes the following: "Trustee Warr owns properties in the Village"; "Warr complained to the Mayor, certain trustees, Fred Hanss and Village Administrator Fenton that I did not give him a variance to use a room as a bedroom that would have been illegal"; "Warr was upset that a parking issue arose at 9 Pierrepont when it was being registered as a rental property by the new owner"; and "At least one State level code official was concerned that the Village would take adverse employment action against me based on my reports of code violations at Clarkson." There is no other statement alleging protected

speech in plaintiff's Statement of Material Facts or his reponse to defendants' Statement of Material Facts.

Plaintiff's "Declaration" on this motion includes the assertion that he has "create[d] a question of fact about whether the three (3) Clarkson University employees who voted to terminate [him] acted out of prejudice, ill will, spite and in retaliation for the performance of [his] job." He further states:

> I have spelled out my claims for violation of my Constitutional Right to Freedom of Expression by identifying what I said to whom and the retaliation I suffered as a result. The Defendants acted in a governmental capacity when they fired me for speaking truthfully to them and to others about the scope, extent and applicability of the Codes. They have deprived me of the right to continue to speak by depriving me of my job.

In his Memorandum of Law on this motion, plaintiff expands his First Amendment retaliation claim to assert that he engaged in protected speech as follows:

> When Plaintiff (and others) told Clarkson and Warr that they were in violation of the Codes, he was speaking to property owners, not his bosses at the Village. When Clarkson and Warr complained to the Defendants, they were speaking as private citizens. When the response from Defendants was to terminate Plaintiff, that was retaliation and the consequential deprivation of Plaintiff's right to speak as he saw fit.

It is well established that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Speech made "pursuant to" a public employee's job duties is defined as "speech that owes its existence to a public employee's professional responsibilities." *Id*. As the *Garcetti* court explains: "Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official

-8-

consequences, creating a need for substantive consistency and clarity.  Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." *Id.* at 422-23.  For this reason, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen" and thus does not implicate the First Amendment.  *Id*. at 421-22; *accord Weintraub v. Board of Educ.*, 593 F.3d 196, 201-02 (2d Cir. 2010).

Here, plaintiff's First Amendment claim is that defendants retaliated against him for making statements pursuant to his official duties.  In support of this claim he relies solely on speech that owed its existence to his professional responsibilities as Code Enforcement Officer, specifically speech "about the scope, extent and applicability of the Codes."  Regardless of whether plaintiff's speech to Clarkson and Warr constituted speech to private citizens, plaintiff himself was not speaking as a private citizen, but rather in his role as Code Enforcement Officer.  Thus, as a matter of law, plaintiff was not engaged in speech protected by the First Amendment.  Summary judgment dismissing plaintiff's First Amendment retaliation claim is granted.

**Claim Four - Federal Constitutional Claim – Due Process**

The issue of whether plaintiff was improperly denied a hearing and other protections under CSL § 75 is properly determinable in a post-termination Article 78 proceeding.  *See, e.g., Bailey v. Susquehanna Valley Cent. School Dist.,* 714 N.Y.S.2d 389, 391 (3d Dep't 2000); *Bonacci v. Quinones*, 508 N.Y.S.2d 42, 43 (2d Dep't 1986).  Thus, plaintiff's Fourteenth Amendment due process claim fails because his right to a post-termination proceeding under Article 78 is "a wholly adequate post-deprivation hearing for due process purposes."  *Leary v.*

*Civil Serv. Empls. Ass'n*, 516 Fed.Appx. 42, 43 (2d Cir. 2013) (quoting *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir.2001)); *accord Vargas v. City of N.Y.*, 377 F.3d 200, 208 (2d. Cir. 2004) (affirming dismissal of former police officer's constitutional due process claim on ground that Article 78 "provides a meaningful remedy where violations of due process by a local government entity are alleged"). Defendants are entitled to summary judgment dismissing plaintiff's Fourteenth Amendment due process claim as a matter of law.

**Supplemental Jurisdiction**

Having dismissed plaintiff's sole federal claims, the Court turns to consider whether to exercise supplemental jurisdiction over the state law claims or whether to remand them to state court. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]"). The Supreme Court advises:

> [A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988). " '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' " *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon*, 484 U.S. at 350 n.7).

In the instant case, discovery has been completed and the parties' positions on summary judgment have been thoroughly briefed. This Court has not, however, previously ruled on any

-10-

motion affecting the merits, and the state law issues differ substantially from the two federal issues decided herein. Therefore, the benefit of the pretrial proceedings already conducted will not be lost if the case is remanded, and the factors of judicial economy and convenience do not weigh significantly for or against remand. Refusal to exercise supplemental jurisdiction will not result in unfairness, particularly because the action was commenced in state court and plaintiff will not be required to bring a new action. Most importantly, the factor of comity favors remand. The remaining claims concern quintessentially state-law matters, in particular the interpretation of St. Lawrence County's Civil Service Rules, which have been approved by the New York State Civil Service Commission, and the applicability of CSL § 75-b to plaintiff's "whistle-blower" claim, which differs from plaintiff's First Amendment retaliation claim in a number of respects. As the Second Circuit recently noted, "concerns of comity and of federalism ... encourage remanding to the state courts cases in which state court adjudication can properly claim primacy of interest." *Sunnen v. New York State Dept. of Health*, 544 Fed.Appx. 15, 17 (2d Cir. 2013) (quoting *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 562 (2d Cir. 1978)). Accordingly, retaining jurisdiction over the case would be inappropriate, and this Court exercises its discretion to remand the remaining claims to New York State Supreme Court, St. Lawrence County.

## CONCLUSION

It is therefore

ORDERED that defendants' motion (Dkt. No. 31) is granted insofar as it seeks summary judgment dismissing Claim Four; and it is further

ORDERED that plaintiff's cross motion (Dkt. No. 37) for partial summary judgment is denied; and it is further

ORDERED that the remaining claims are remanded to New York State Supreme Court, St. Lawrence County. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

Date: September 22, 2014
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge